OPINION OF THE COURT
Andrew Lehrer, J.
*607 Background
Petitioner Anthony W. Barr commenced this “no grounds” holdover proceeding against respondent tenant Gary Huggins on October 18, 2012. The petition, which is dated October 2, 2012, alleges, among other things, that the subject apartment is not rent-controlled or rent-stabilized because it is located in a two-family house; that the apartment is located on the second floor of the subject building; that Mr. Huggins is the tenant of the apartment; that he entered into possession thereof pursuant to a written rental agreement made on or about February 1, 2010 for a two-year term commencing February 1, 2010 and ending January 31, 2012; and that the term for which the apartment was rented expired on September 30, 2012 pursuant to a 30-day notice of termination dated August 21, 2012, which was personally delivered to Mr. Huggins on August 30, 2012.
Mr. Huggins, who is not represented by counsel, did not file an answer. However, at the pretrial conference, he alleged that his lease was still in effect.
The Trial
The trial of this case took place on May 9 and June 25, 2013.
Petitioner’s Evidence
Anthony Barr testified that he owned the subject building, which is a two-family house; that he rented the subject apartment to Mr. Huggins; that Section 8 gave him money for the apartment; and that Mr. Huggins currently lives in the apartment without a lease. In support of his testimony, Mr. Barr submitted the original lease. Although it is not dated, it refers to the apartment as apartment 2 and is for a two-year term commencing February 1, 2010 and ending January 31, 2012, at a rent of $1,449 per month. Attached to the lease is a housing assistance payment (HAP) contract signed by Mr. Barr and a representative of the New York City Housing Authority (NYCHA). According to the HAP contract, NYCHA agreed to pay Mr. Barr $797 per month, with the balance of the rent to be paid by Mr. Huggins.
On cross-examination, Mr. Barr admitted that he had signed a new lease for the apartment on November 21, 2011 (about two months before the first one was to expire) and that Mr. Huggins had told him he would not accept a one-year term. He further testified, however, that he only offered Mr. Huggins a one-year lease.
*608 Respondent’s Evidence
Gary Huggins testified that on April 20, 2012, Mr. Barr brought him two leases, both of which indicated that they would expire in February 2014; that he signed both leases, kept one of them, and returned the other to Mr. Barr; that he sent the new lease to NYCHA for approval; that when he first rented the apartment, he insisted on a two-year lease and was given one; and that he never signed a one-year lease, and would not do so, because his son is asthmatic and it would be difficult for them to move. He supported his testimony with his copy of an undated lease that appears to have been signed by Mr. Barr on November 21, 2011 but was not signed by Mr. Huggins until April 20, 2012. The lease term begins on February 1, 2012 and ends on January 31, 2014. However, it is clear that someone altered the expiration year from 2013 to 2014.
On cross-examination, Mr. Huggins stated that he did not alter the new lease; that he told Mr. Barr that Section 8 might have a problem with that lease (because of how it looked); and that he asked Mr. Barr for a new one.
Although Mr. Huggins had not previously raised retaliatory eviction as a defense, and petitioner initially objected to his doing so at trial, he testified, without further objection, that he had leaks in his apartment for eight months before he took Mr. Barr to court “in September”; that in September 2012 he went to NYCHA to file a complaint about the leaks; that after calling 311, an inspector came to his apartment on September 6, 2012; that Mr. Barr told him that he would do repairs when he was ready to do so and that “no tenant doesn’t pay him rent for repairs or whatever” and he “wouldn’t care if you had a flood like Noah’s ark.” Mr. Huggins claimed that Mr. Barr commenced this case in retaliation for his filing complaints with the City and NYCHA, and because he commenced a court case to compel Mr. Barr to fix the leaks in his apartment, and pointed out that although his first lease ended on January 31, 2012, Mr. Barr did not commence this case until October 18, 2012. He supported his retaliatory eviction claim with a letter from Mr. Barr dated May 4, 2012, which indicated that he would commence a “holdover Action” against him if he did not pay his arrears of $3,783;[1] a receipt from NYCHA dated September 4, 2012, stating that he had requested a special inspection regarding *609 leaks in his ceiling; a printout of violations of record downloaded from the website of the Department of Housing Preservation and Development (HPD), showing that four violations for apartment 1 on the first floor,* [2] including two for water leaks, were found by that agency on September 6, 2012, and that several other violations, including two for roof leaks, were reported on December 5, 2012; a history of complaints made to HPD regarding the building from May 9, 2012 through May 9, 2013, also downloaded from HPD’s website, showing that several complaints regarding the first floor apartment, including one about a roof leak, were made on September 5, 2012, November 29, 2012, and December 27, 2012; a copy of Mr. Huggins’ order to show cause dated November 29, 2012, commencing an HP action against Mr. Barr; several other orders to show cause in the HP action, in which Mr. Huggins asked the court to impose civil penalties against Mr. Barr for failing to make repairs; and a default order issued in the HP action on January 24, 2013, in which the court imposed civil penalties against Mr. Barr.
A representative from NYCHA testified that NYCHA’s records do not indicate when the new lease was submitted for approval but do show that it was eventually approved.
Finally, Mr. Huggins called Mr. Barr as a witness. He testified that he did not recall bringing Mr. Huggins two leases on April 20, 2012 but did recall that he had presented him with a lease that was to expire in 2013; that Mr. Huggins had told him that he would not sign a one-year lease; and that he (Mr. Barr) did not agree to give him a two-year lease. He further testified that after court on May 9th he told Mr. Huggins that this “whole thing started” because in August Mr. Huggins refused to pay the rent and told him (Mr. Barr) to take him (Mr. Huggins) to court.
Discussion
Whether a New Lease is in Effect
Mr. Barr claims that in November 2011 he signed a new lease for the apartment with a one-year term commencing February *610 1, 2012. Both he and Mr. Huggins agree that Mr. Huggins did not accept a one-year lease. Mr. Huggins claims, however, that in April 2012 Mr. Barr agreed to give him a two-year lease and he (Mr. Barr) changed the expiration year on the lease he had previously signed from 2013 to 2014. Mr. Barr denies this and claims that it is Mr. Huggins who changed the expiration year.
Based on its examination of the new lease, the court finds that Mr. Barr did not alter it. While the top of the “4” in the year 2014 comes to a point, each of the several other handwritten “4s” on that lease were open at the top. Thus, the court concludes that Mr. Barr did not agree to give Mr. Huggins a two-year lease and, since Mr. Huggins did not agree to the one-year term offered by Mr. Barr, there is no current lease in effect.
Retaliatory Eviction
The statutory protections against retaliatory eviction are set forth in section 223-b of the Real Property Law, which applies to “all rental residential premises except owner-occupied dwellings with less than four units.” (Real Property Law § 223-b [6].) It provides, among other things, that no landlord shall serve a notice to quit or commence a summary proceeding to recover possession of real property in retaliation for
“[a] good faith complaint, by or in behalf of the tenant, to a governmental authority of the landlord’s alleged violation of any health or safety law, regulation, code, or ordinance, or any law or regulation which has as its objective the regulation of premises used for dwelling purposes” (§ 223-b [1] [a]) or “[ajctions taken in good faith, by or in behalf of the tenant, to secure or enforce any rights under the lease or rental agreement, under section two hundred thirty-five-b of this chapter, or under any other law of the state of New York, or of its governmental subdivisions, or of the United States which has as its objective the regulation of premises used for dwelling purposes” (§ 223-b [1] [b]).
If a court finds that the landlord commenced an eviction action or proceeding in retaliation for the tenant having taken any protected action, and also finds that the landlord would not otherwise have commenced such action or proceeding, “judgment shall be entered for the tenant.” (§ 223-b [4].)
Section 223-b provides for a rebuttable presumption of retaliation where, among other things, a landlord serves a notice to *611 quit or commences a proceeding to recover possession within six months after the tenant makes a good faith complaint “to a governmental authority of the landlord’s violation of any health or safety law, regulation, code, or ordinance, or any law or regulation which has as its objective the regulation of premises used for dwelling purposes” (§ 223-b [5] [a]), or the tenant in good faith commences
“an action or proceeding in a court or administrative body of competent jurisdiction to secure or enforce against the landlord or his agents any rights under the lease or rental agreement, under section two hundred thirty-five-b of this chapter, or under any other law of the state of New York, or of its governmental subdivisions, or of the United States which has as its objective the regulation of premises used for dwelling purposes” (§ 223-b [5] [b]).
Where the presumption of retaliation is created, the landlord may overcome it by providing “a credible explanation of a non-retaliatory motive for his acts,” unless the tenant disproves that explanation by a preponderance of the evidence. (§ 223-b [5].)
A tenant seeking to invoke the protections of section 223-b must assert retaliatory eviction as an affirmative defense. (See § 223-b [4].)
A. Whether Mr. Huggins May Assert a Retaliatory Eviction Defense
As noted above, Mr. Huggins did not file a written answer, and the only defense he raised at the pretrial conference was that his lease was still in effect. He did not raise a retaliatory eviction defense until he began to testify on the first day of trial. Because retaliatory eviction must be asserted as an affirmative defense, the court may consider that defense, therefore, only if Mr. Huggins’ answer is amended to include it as such.
Section 3025 (c) of the CPLR provides that a court may permit pleadings to be amended before or after judgment to conform them to the evidence, upon such terms as may be just, including the granting of costs and continuances. Moreover, it may do so even in the absence of a motion, provided there is no prejudice to the opposing party. (See Matter of Allstate Ins. Co. v Joseph, 35 AD3d 730, 731 [2d Dept 2006], citing A-1 Cheek Cashing Serv. v Goodman, 148 AD2d 482 [2d Dept 1989].) Here, although petitioner initially objected to Mr. Huggins’ testimony regarding the leaks in his apartment, he raised no objection *612 when Mr. Huggins testified about the complaints he made to NYCHA and 311, and about the HP action he filed, nor did his attorney object when Mr. Huggins questioned him regarding a recent conversation they had regarding his motive for bringing this case.
Given petitioner’s failure to object to the bulk of Mr. Huggins’ testimony regarding his retaliatory eviction defense, and given further that petitioner had the opportunity to present rebuttal testimony, but failed to do so; that petitioner had an opportunity to seek a continuance, but failed to do so; and that Mr. Huggins was not represented by counsel, the court deems Mr. Huggins’ answer amended to include an affirmative defense of retaliatory eviction and to conform to the evidence presented in regard thereto.
B. Whether Section 223-b of the Real Property Law Applies to This Case
As noted above, section 223-b applies to “all rental residential premises except owner-occupied dwellings with less than four units.” (Real Property Law § 223-b [6].) Although the subject building has only two units, section 223-b applies to this case because Mr. Barr does not live there.
C. Whether the Statutory Presumption of Retaliation Applies
According to Mr. Barr, he commenced this proceeding because in August 2012 Mr. Huggins refused to pay his rent and told him to take him to court. In light of Mr. Huggins’ testimony that he had leaks in his apartment, testimony which was supported by HPD’s printout of violations, his withholding of rent in August, coupled with his telling Mr. Barr to take him to court, constitutes an action taken in good faith to enforce his rights under section 235-b of the Real Property Law, the statutory warranty of habitability,[3] ****8 and therefore is action protected under section 223-b. (See Real Property Law § 223-b [1] [b].) However, because withholding rent is not equivalent to commencing an action or proceeding to enforce rights under section 235-b, it is insufficient to create a rebuttable presumption of retaliation. (See § 223-b [5] [b].)
That being said, Mr. Huggins’ complaints to 311 and NYCHA regarding the conditions in his apartment would create a rebut- *613 table presumption of retaliation if Mr. Barr served his notice to quit within six months after those complaints were made. (See § 223-b [5] [a].) However, because Mr. Huggins did not make those complaints until the beginning of September 2012, and Mr. Barr served his notice to quit on August 30, 2012, several days before the complaints were made, the statutory presumption of retaliation does not apply.
D. Whether Mr. Barr Served a Notice to Quit in Retaliation for Protected Action Taken by Mr. Huggins
As noted above, Mr. Barr testified that he commenced this proceeding because Mr. Huggins refused to pay his rent in August and told him to take him to court. Given the court’s finding that Mr. Huggins withheld his rent to enforce his rights under the warranty of habitability, the court also finds that Mr. Barr served his notice to quit in retaliation for Mr. Huggins having taken action that is protected under section 223-b.
E. Whether Mr. Huggins is Entitled to Entry of Judgment in His Favor
Having found that Mr. Barr served his notice to quit in retaliation for Mr. Huggins’ exercise of protected activity, the court must enter judgment for Mr. Huggins if it also finds that Mr. Barr “would not otherwise have commenced” this case. (See Real Property Law § 223-b [4].)
Mr. Barr could have commenced a holdover proceeding in February 2012, after Mr. Huggins’ lease expired. Nevertheless, he did not serve a notice to quit until the end of August, and did so, as he stated, because Mr. Huggins refused to pay his rent that month. It appears, therefore, that Mr. Barr would not have commenced this case if Mr. Huggins had paid his rent. Given that Mr. Huggins’ share of the rent was determined by NYCHA and set forth in Mr. Barr’s HAP contract with NYCHA, and the HAP contract was still in effect, Mr. Barr could have sought Mr. Huggins’ share of the rent in a nonpayment proceeding. The court concludes that by electing instead to commence a holdover proceeding, Mr. Barr sought to retaliate against Mr. Huggins for withholding rent, and would not otherwise have commenced this case.
Accordingly, the petition is dismissed. The Clerk of the Court shall enter judgment in favor of Mr. Huggins and against Mr. Barr.

. Although the letter is dated May 4, 2012, it states that it is regarding a balance of rent due “as of November 2010 ($3,783).” It also states that “you haven’t been consistence [sic] in mating your rent payments since November *609 2010 thus [sic] February 2011” and that he owes his portion of rent from “November - January” at $652 per month and from “February - April” at $609 per month. At trial, Mr. Huggins testified that he had paid his rent in full.

. Although the petition identifies Mr. Huggins’ apartment as being the second floor of the subject building, and the first lease for the apartment identifies it as apartment 2, in his Housing Part (HP) action Mr. Huggins identified his apartment as apartment 1 and on his inspection request, stated that it was located on the first floor.

. A tenant may enforce his rights under the warranty of habitability by seeking damages in a plenary action or by asserting breach of the warranty of habitability as a defense and/or counterclaim in a summary nonpayment proceeding. (See Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 329 [1979].) Thus, a tenant may enforce his rights under section 235-b by withholding rent and inducing a landlord to commence a nonpayment proceeding.